UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| CHRISTOPHER KANE and LINDA KANE, | : | |
|---|---|---|
| Plaintiffs | : | CIVIL ACTION NO. 3:08-1883 |
| v. | : | (CAPUTO, D.J.) |
| | : | (MANNION, M.J.) |
| JANET WALTRIP, et al., | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

Pending before the court is the plaintiffs' motion for remand. (Doc. No. 4). For the following reasons, it is recommended that the plaintiffs' motion be granted.

I. **PROCEDURAL HISTORY**

By way of relevant background, on September 9, 2008, the plaintiffs filed, in the Court of Common Pleas of Lackawanna County, a complaint arising out of the actions of the defendants involving a July 2, 2005, work injury suffered by the plaintiff, Christopher Kane, ("Mr. Kane"). (Doc. No. 1 Ex. A). The complaint advances the following causes of action against all defendants: (1) fraudulent misrepresentation/concealment; (2) intentional misrepresentation; (3) negligent misrepresentation; (4) breach of fiduciary duty; (5) breach of contract; (6) good faith and fair dealing; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; (9) violations of the Unfair Trade Practices and Consumer Protection Laws; (10)

bad faith; (11) negligence in handling and direction of medical care and treatment of a person; and (12) loss of consortium. (Doc. No. 1, Ex. A).

The defendants filed a notice of removal on October 10, 2008, arguing that this court has diversity jurisdiction over the complaint pursuant to 28 U.S.C. §1332, as the only non-diverse defendant, Pump Integration, Inc., ("Pump Integration"), was fraudulently joined or, in the alternative, is a nominal party. (Doc. No. 1).

On November 4, 2008, the plaintiffs filed the instant motion to remand, (Doc. No. 4), together with a memorandum of law in support, (Doc. No. 5), and exhibits, (Doc. No. 6). A brief in opposition to the plaintiffs' motion was filed on behalf of the Hartford defendants[1] on November 19, 2008, (Doc. No. 8), and the plaintiff filed a reply on November 26, 2008, (Doc. No. 15). On December 1, 2008, defendant Pump Integration filed a brief in opposition to the plaintiff's motion for remand, joining in the brief previously filed on behalf of the Hartford defendants. (Doc. No. 12). On December 2, 2008, the plaintiffs filed a reply brief in response to the second brief in opposition. (Doc. No. 13).

## II.  DISCUSSION

Subject matter jurisdiction grounded on the parties' diversity of citizenship requires that the plaintiffs and defendants be citizens of different

---

[1]The Hartford defendants include all defendants except defendant Pump Integration.

states and that the amount in controversy exceeds $75,000 exclusive of interest and costs. 28 U.S.C. §1332(a). In the instant action, the threshold amount in controversy is not in dispute. However, the parties agree that defendant Pump Integration and the plaintiffs are residents of Pennsylvania and therefore are non-diverse parties. (Doc. No. 1, Ex. A, ¶¶1, 35).

Pursuant to 28 U.S.C. §1441(a), a defendant in state court may remove the case to federal court if the federal court can exercise original jurisdiction over the matter. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over the claim(s), the case may be remanded. Id. §1447(c). Section 1441 is strictly construed against removal "so that the Congressional intent to restrict federal diversity jurisdiction is honored." Samuel-Bassett v. Kia Motors of America, Inc., 357 F.3d 392, 396 (3d Cir. 2004); see also Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). All doubts about whether a plaintiff satisfies the jurisdictional requirements must be resolved in favor of remand. Samuel-Bassett, 357 F.3d at 403.

When non-diverse parties have been joined as defendants, then in the absence of a federal question, the removing defendant may avoid remand only by demonstrating that the non-diverse parties were fraudulently joined to destroy diversity. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). The removing defendant carries a "heavy burden of persuasion" in making this showing. Id. (quoting Steel Valley Author. v. Union Switch &

Signal Div., 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)); see also Morgan v. Gay, 471 F.3d 469, 475 (3d Cir. 2006).

Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." Batoff, 977 F.2d at 852; see also Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990). A claim is not colorable if it is "wholly insubstantial and frivolous." Batoff, 977 F.2d at 852. In evaluating the alleged fraud, a district court must focus on the plaintiff's complaint at the time the petition for removal was filed. Id. The court must assume all factual allegations as true and "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id. (quoting Boyer, 913, F.2d at 111).

The court may also "pierce the pleadings" and look beyond the allegations to identify indicia of fraudulent joinder. Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985); Collins v. David Brown Union Pumps Co., No. 06-cv-3754, 2007 U.S. Dist. LEXIS 29942, at *6 (E.D. Pa. Apr. 23, 2007). However, the court must be careful not to step "from the threshold jurisdictional issue into a decision on the merits." In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006); Collins, at *6 (stating that "this piercing should be limited in scope as it is not the province of the district court to do a deeper 12(b)(6) analysis"); see also Boyer, 913 F.2d at 113. Consequently, even if

a possibility exists that a state court will find that the complaint states a cause of action against any one of the defendants, remand is warranted. Boyer, 913 F.2d at 111 (emphasis added). The fact that the state court may ultimately dismiss the claims has no bearing on whether certain defendants were fraudulently joined. Batoff, 977 F.2d at 852.

In their complaint, the plaintiffs allege that Mr. Kane suffered an injury primarily to his left middle finger and left hand while acting within the scope of his employment on July 2, 2005[2]. (Doc. No. 1, Ex. A, ¶40). He received medical treatment for his injury in August 2005. Later, Mr. Kane developed a left middle finger/hand wound infection, which required multiple surgeries. (Id. at ¶¶41-42).

In May 2006, Mr. Kane had a biopsy performed on a sample tissue from his left middle finger and was diagnosed with squamous cell carcinoma impacting his left middle finger/hand requiring partial amputation. (Id. at 46-47). As a result, he was referred to an oncologist to receive immediate care and treatment for his condition. Mr. Kane's treating oncologist, Dr. Greenwald, advised that it was necessary to stage the squamous cell carcinoma condition with aggressive treatment to be provided. (Id. at 49-52). At this time, the defendants were aware that Mr. Kane was in need of oncologic treatment and knew that he did not have alternative private medical coverage to pay for the

---

[2]As set forth above, for purposes of the instant motion to remand, the allegations set forth in the plaintiffs' complaint are accepted as true.

treatment if Workers' Compensation refused payment. (Id. at 54).

On September 15, 2006, Dr. Greenwald authored a report given to the defendants which confirmed that the squamous cell carcinoma condition, which at that time was limited to Mr. Kane's left middle finger/hand, was related to the July 2, 2005, work injury and required immediate medical care and treatment. (Id. at ¶¶55-56). Despite this, the defendants refused to acknowledge that Mr. Kane had suffered any work related injuries, including the squamous cell carcinoma condition, and refused to pay for medical care and treatment to be received by Mr. Kane. (Id. at 57).

From July 20, 2006, through November 15, 2007, the defendants refused to recognize Mr. Kane's work injury and need for treatment, including reasonable and necessary medical care and treatment for the left middle finger/hand squamous cell carcinoma condition, despite receiving repeated notice that, if left untreated, the plaintiff's condition would be aggravated and spread beyond the left middle finger and hand. (Id. at ¶¶59-71).

On November 15, 2007, the defendants received a decision and order from Workers' Compensation Judge Doneker confirming that Mr. Kane had suffered a July 2, 2005, work injury and did have a squamous cell carcinoma condition related to the work injury that required immediate medical care and treatment. However, by the time that the defendants were ordered to accept these facts, Mr. Kane's squamous cell carcinoma condition had become aggravated, spread and metastasized to areas beyond his left middle

finger/hand to include his left elbow, left upper extremity, torso and internal organs including but not limited to his lungs. (Id. at ¶¶ 72-80). As a result of the aggravation of his condition, Mr. Kane was required to undergo an amputation of his left arm. (Id. at 79).

The plaintiffs allege that the aggravation/worsening/spread/metastasises of Mr. Kane's squamous cell carcinoma condition beyond his left middle finger and hand were directly attributable to the inappropriate actions of the defendants. Further, the plaintiffs allege that the defendants engaged in intentional actions before the work-related injury had been accepted that caused the aggravation of the condition which produced a more serious and dire medical condition that has spread throughout Mr. Kane's body. (Id. at ¶81). The plaintiffs allege that the defendants engaged in fraudulent misrepresentation and/or non-disclosures of material facts that were calculated to delay the receipt of medical care and treatment by Mr. Kane causing him to suffer an aggravation of his condition. (Id. at ¶82). The plaintiffs further allege that the defendants acted to conceal, alter or intentionally misrepresent information that served to aggravate Mr. Kane's condition prior to any Workers' Compensation adjudication when the defendants knew that such actions would produce an aggravation/spreading of the condition. (Id. at 84-89).

According to the plaintiffs' complaint, no later than May 22, 2007, did all of the defendants have medical evidence from both treating providers and

medical evaluators retained by the defendants confirming the work related nature of the squamous cell carcinoma, yet they continued to refuse to acknowledge the work injury and/or pay for medical care and treatment. (Id. at ¶¶90-97).

In their notice of removal, the defendants claim that the plaintiffs have fraudulently joined Mr. Kane's employer, defendant Pump Integration, a Pennsylvania corporation, to destroy diversity jurisdiction. The defendants argue that the Pennsylvania Workmen's Compensation Act, ("WCA"), is the sole and exclusive means of recovery against employers for all injuries arising out of accidents occurring within the course of employment[3]. The defendants claim that the "[p]laintiffs have engaged in artful pleading and have brought a cause of action against a party with no reasonable prospect of liability in an attempt to avoid well-settled Pennsylvania law which provides employers with immunity from claims arising out of the alleged improper handling of its employee's workers' compensation claim." Based upon their interpretation of Pennsylvania law, the defendants argue that the plaintiffs have no reasonable

---

[3] As far as this argument is concerned, the court notes that the employer's immunities and protections under the exclusivity provision of the WCA extend to the compensation insurance carrier. See 77 P.S. §501("Such insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protections hereunder . . ."); See also Santiago v. Pennsylvania Nat'l Mutual Casualty Ins. Co., 613 A.2d 1235, 1238 (Pa.Super. 1992)(citations omitted). Therefore, if the plaintiffs' claims are barred as against defendant Pump Integration, they would also be barred with respect to it's compensation insurance carrier, the Hartford defendants.

8

basis in fact or colorable ground supporting the claims against the defendant Pump Integration, and that the citizenship of defendant Pump Integration should not be considered for diversity or removal purposes.

As set forth above, in considering the defendants' claim of fraudulent joinder, the court must assume all factual allegations in the complaint as true and "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id. (quoting Boyer, 913, F.2d at 111).

Generally, the WCA is the sole remedy of an employee against an employer for injuries suffered during the course of employment. See 77 P.S. §481(a)[4]. Section 481(a) also bars any action by others "otherwise entitled to damages in any action at law or otherwise" for a work-related injury[5]. The same exclusivity of remedy is applied in cases against an employer's insurer. See 77 P.S. §501.

Because of the provisions of the WCA, courts have been cautious about

---

[4]Section 481(a) of the WCA reads, in relevant part, as follows:

> The liability of a employer under this act shall be exclusive and in place of any and all other liability to such employes (sic), his legal representative, husband or wife, parents, dependents, next of kin or any one otherwise entitled to damage in any action at law or otherwise on account of injury or death . . . or occupational disease . . .

77 P.S. §481(a).

[5]See n.4.

9

permitting common law litigation in matters arguably connected with work-related injuries, even where intentional conduct is alleged on the part of the employer. See Kuney v. PMA Ins. Co., 578 A.2d 1285 (Pa. 1990)(granting immunity for workers' compensation carrier despite the plaintiffs' allegations of fraudulent and deceitful conduct to deprive injured employees of their workmen's compensation benefits); Barber v. Pittsburgh Corning Corp., 555 A.2d 766 (Pa. 1989)[6](holding that employees injured by exposure to asbestos dust could not sue at common law even if the employer intentionally allowed unsafe levels of asbestos dust, did not adequately warn employees of the danger, and falsely represented to its employees that the workplace was safe); Poyser v. Newman & Co., 522 A.2d 548 (Pa. 1987)(the WCA barred action against employer even when the employee alleged that he was injured by a machine made unsafe by his employer's willful disregard of its employees' safety and federal and state safety regulations, and the employer had fraudulently misrepresented safety conditions to federal inspectors by concealing the defective machine from them).

However, in 1992, the Pennsylvania Supreme Court recognized a narrow exception to this exclusivity provision in Martin v. Lancaster Battery

---

[6]Barber was a case dealing with the Pennsylvania Occupational Disease Act, as opposed to the WCA. However, the Barber court placed significant reliance on Poyser, infra, in its ruling because of the similarity in statutory language between the Occupational Disease Act and the WCA granting immunity to the employer.

10

Co., 606 A.2d 444 (Pa. 1992). The facts of Martin have been summarized as follows:

> In Martin, the defendant company manufactured automotive batteries, and the process exposed its employees to lead dust and fumes. Federal regulations required that the workers' blood be periodically tested for lead content. Additionally, according to the complaint, the company had a policy of "closely monitor[ing] lead levels in employees' blood and . . . report[ing] the results to the employees so that those with elevated levels of lead in their blood could transfer to non-lead areas . . ." 530 Pa. at 19, 606 A.2d at 448 (brackets added).
>
> The plaintiff worker and his wife sued the company and the manager responsible for administering the blood tests. They alleged that the manager "willfully and intentionally withheld the results of his blood tests" for a period of about three and one-half years, from January 1, 1982, until July 1985. Id. at 14, 606 A.2d at 446. They also alleged that the manager had "intentionally altered blood test results before forwarding the results to" him. Id. at 14, 606 A.2d at 446. As a result, the plaintiffs alleged that the plaintiff worker:
>
>> was diagnosed with chronic lead toxicity, lead neuropathy, hypertension, gout, and renal insufficiency. The severity of his condition would have been substantially reduced if his employer had not perpetrated a delay by failing to accurately report the elevated levels of lead in Mr. Martin's blood.
>
> Id. at 14, 606 A.2d at 446. The plaintiff's made a claim for fraudulent misrepresentation, averring that "[h]ad Mr. Martin been told about the elevated levels of lead in his blood when the tests first indicated such levels, he could have promptly reduced his exposure to lead and received timely and appropriate medical care. Consequently, the severity of his condition would have been substantially reduced." Id. at 19, 606 A.2d at 448 (brackets added).

Dean v. Handy & Harman, 961 F.Supp. 798, 803 (M.D.Pa. 1997)(Caldwell, J.).

11

In Martin, the Pennsylvania Supreme Court held that the WCA is not the exclusive remedy for the aggravation of an employee's work-related injury where the employer's fraudulent misrepresentation has been alleged. In so holding, the court ruled that the Pennsylvania legislature "could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to coverage provided by the Workman's Compensation Act." Id. at 17-18, 606 A.2d at 448. The court further noted in allowing the plaintiff's common law claim that he was not seeking compensation for the work-related injury itself but only for the aggravation thereof. The court found that the aggravation of the injury arises from and is related to the fraudulent misrepresentation of the employer. Therefore, the plaintiffs were not limited to their remedies under the WCA and were not precluded from bringing a common law action against the employer.

In Santiago v. Pennsylvania Nat'l Mutual Casualty Ins. Co., 613 A.2d 1235 (Pa.Super. 1992), the Pennsylvania Superior Court found that Martin is germane where the employer has "concealed, altered or intentionally misrepresented information related to the work-related injury which results in [its] aggravation." Id. at 1241.

Thereafter, the Pennsylvania Superior Court has, on several occasions, interpreted Martin to stand for the proposition that only suits for deliberate conduct, specifically fraudulent misrepresentation, which aggravates a work-related condition are permitted prior to or in lieu of the adjudication of

12

such conduct under the provisions of the WCA. See Hammerstein v. Lindsay, 655 A.2d 597, 602 n.5 (Pa.Super. 1995)("The holding of Martin is limited to situations where the employer has engaged in fraudulent misrepresentation."); Grant v. G.A.F. Corp., 608 A.2d 1047, 1056 (Pa.Super. 1992)("[W]here an employee alleges fraudulent misconduct on the part of an employer which causes aggravation of a work-related injury, the employee is not barred from pursuing a common law claim against the employer.").

In Fry v. Atlantic States Ins. Co., 700 A.2d 974 (Pa.Super. 1997), the Pennsylvania Superior Court found that its narrow reading of Martin requiring that both fraud and delay leading to exacerbation of the injury be present to remove a claim from the WCA comports with the Pennsylvania Supreme Court's ruling in Kuney v. PMA Insurance Co., 578 A.2d 1285 (Pa. 1990), which was not overturned by Martin. In Kuney, the court granted immunity from tort action even where the workers' compensation insurance carrier engaged in fraud and deceit to deprive an injured claimant of his benefits, holding that the WCA provisions and recovery schema applied because "permitting a tort action would be inconsistent with the fact that the compensation statute provides a comprehensive system for adjudicating workers' compensation disputes, including specific remedies for the alleged injury," that is, fraudulent denial of the claim. Id. at 1286-87. The Fry court found that Martin supplies relief only where the WCA is silent, that is, where there has been an aggravation of a work-related injury and fraud precipitating

13

it. Separately, the court found that either may be remedied under the WCA.

In the instant action, the defendants argue that the exception in Martin applies only where the facts establish: (1) the employer was required by federal law to test its employees for lead content in their blood; (2) the employer withheld results of its employee's blood tests; and (3) the employer intentionally altered blood test results to conceal from its employee his lead toxicity contracted during his employment. Because the plaintiffs have not pled these claims against defendant Pump Integration, the defendants argue that their claims are wholly insubstantial and frivolous. However, as discussed above, while the holding in Martin is limited, it is not as fact specific as the defendants would argue.

The plaintiffs in the instant action have alleged that, after the initial work-related injury, and prior to the acceptance or adjudication of Mr. Kane's workers' compensation claim[7], when Mr. Kane was definitively diagnosed with

---

[7]In Winterberg v. Transportation Ins. Co., 72 F.3d 318 (3d Cir. 1995), the Third Circuit had occasion to address the Martin exception to the exclusivity provision. There, the plaintiff and his wife brought an action in the Philadelphia Court of Common Pleas setting forth claims similar to those brought in the instant action. Specifically, the plaintiffs alleged claims of bad faith, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, intentional infliction of emotional distress, breach of contract, fraud and deceit. The action was removed to the United States District Court for the Eastern District of Pennsylvania and was found to be barred by the exclusive remedy provision of the WCA. On appeal, the Third Circuit affirmed. In doing so, however, the court noted that, since Martin did not overrule Kuney, the decisions must be read consistently. Under that reading, the Third
(continued...)

squamous cell carcinoma, the defendants, individually and in concert with one another, engaged in intentional and fraudulent acts that delayed Mr. Kane's receipt of medical care and treatment. From May 2006 through November 2007, the plaintiffs allege that the defendants concealed, altered or intentionally misrepresented information that allowed Mr. Kane's work-related injury to progress, spread, metastasize and be aggravated beyond the left middle finger/hand work injury, which produced separate life-threatening injuries of squamous cell carcinoma impacting the left upper extremity, torso, and internal organs, including but not limited to his lungs. It is for the aggravation or worsening of Mr. Kane's work-related injury, not the injury itself, for which the plaintiffs seek to recover. With these allegations, the plaintiffs have alleged the facts necessary to set forth common law claims against the defendants which would fall under the exception set forth by Martin and subsequent Pennsylvania case law and not be barred by the exclusivity provision of the WCA.

Accepting the plaintiffs' allegations as true, as the court must do, and

---

[7](...continued)
Circuit found that ". . . Martin is more accurately characterized as a decision which permits a tort action for deliberate conduct which aggravates a pre-existing injury **before** such injury is adjudicated under the Workmen's Compensation Act." Winterberg, 72 F.3d at 323 (emphasis in original). Otherwise, citing to Kuney, which found that the WCA provides for ten percent interest on unpaid benefits, as well as for penalties for violations of the WCA from ten to twenty percent, the Third Circuit found that the WCA provided adequate remedies.

bearing in mind that the analysis of whether a claim is colorable is less searching than in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this court cannot conclude that the plaintiff's claims against defendant Pump Integration are "wholly insubstantial and frivolous." Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992). It is possible that the Court of Common Pleas of Lackawanna County will find that the plaintiffs can state a viable cause of action against the defendant Pump Integration under the current state of law in Pennsylvania, and thus remand is required.

In the alternative, the defendants argue that defendant Pump Integration is a nominal party. (Doc. No. 1 ¶¶ 21-40). To this extent, the defendants argue that all of the claims against defendant Pump Integration are derivative claims predicated upon the Hartford defendants' alleged improper handling of the plaintiff Christopher Kane's workers' compensation claim under the policy issued to defendant Pump Integration. Further, the defendants argue that defendant Pump Integration cannot be held liable for the common law theories advanced by the plaintiffs because of the exclusivity provision of the WCA, and even in the absence of defendant Pump Integration as a defendant, the plaintiffs may be afforded complete relief, if warranted, and the case may be decided without prejudicing the plaintiffs' rights.

A nominal party is defined as one that is "neither necessary nor indispensable to join in the action." Korsun v. Progressive Northern Ins. Co., 2006 WL 3143169, *3 (M.D.Pa. Oct. 31, 2006)(Caputo, J.)(citing

16

Mallalieu-Goldner Ins. Agency, Inc. v. Executive Risk Indem., Inc., 254 F.Supp.2d 521, 524-25 (M.D.Pa. 2003)(McClure, J.)(internal quotations omitted)). Upon removal, the issue of whether a party is indispensable to an action is determined based on federal law, Id. (citing Mallalieu-Goldner, at 252 (citing Shetter v. Amerada Hess Corp., 14 F.2d 934, 938 (3d Cir. 1994)), and is governed by Rule 19 of the Federal Rules of Civil Procedure. Rule 19 states that a party is "necessary" if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may
> > (i) as a practical matter impair or impede the person's ability to protect that interest or
> > (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a). When it is determined that a party is not "necessary," that party is "by definition not 'indispensable' to the action." Korsun, 2006 WL 3143169, at *3 (citing Mallalieu-Goldner, 254 F.Supp.2d at 525).

Here, the plaintiffs allege that the Hartford defendants were acting as a representative, insurer of, agent, ostensible agent, servant, workman and/or employee for defendant Pump Integration under the insurance policy in place. As such, the plaintiffs allege that all actions, inactions, and claims handling decisions were made by defendant Pump Integration in concert with the Hartford defendants. In addition, the plaintiffs allege that the Hartford

17

defendants' failure to pay Mr. Kane's claim prior to the adjudication of the claim served to further the business interests of defendant Pump Integration in terms of reduced premiums and an altered Workers' Compensation experience modifier, and that defendant Pump Integration would have also had direct control and/or say over the handling of Mr. Kane's claim prior to its final adjudication.

Based upon the plaintiffs' claims, it cannot be said that defendant Pump Integration is a nominal party.

## III. CONCLUSION

On the basis of the foregoing, **IT IS RECOMMENDED THAT** the plaintiffs' motion to remand the case to the Lackawanna County Court of Common Pleas, **(Doc. No. 4)**, be **GRANTED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: June 3, 2009**
O:\shared\REPORTS\2008 Reports\08-1883.01.wpd